AVERY CO. OF TEXAS v. STAPLES MERCANTILE CO.    (No. 5595.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 9, 1916.)

1. Evidence ⟨key⟩434—Parol Evidence Rule —Written Instruments.

While parol evidence is not ordinarily admissible to contradict the terms of a written contract, purchasers of an automobile truck who were deceived into believing that they were buying a new truck when, in fact, the truck was secondhand, cannot be denied relief on account of fraud, because the order blank contained a written warranty providing only for replacing broken parts and guaranteeing against defective material and workmanship; the parol evidence rule not applying in case of fraud.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2005–2020; Dec. Dig. ⟨key⟩434.]

2. Sales ⟨key⟩266 — Rights of Purchaser — New Article.

A purchaser of an automobile truck from a manufacturer is entitled in the absence of special agreement to assume that it is new.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 743, 746, 747, 754–759; Dec. Dig. ⟨key⟩266.]

3. Sales ⟨key⟩397—Actions—Petition.

Where the purchasers of a motor truck contended that it was secondhand and wholly unfit for use, they may plead and prove amounts expended in attempting to operate the motor as a circumstance establishing that it was defective; no recovery for such amounts being sought.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1136; Dec. Dig. ⟨key⟩397.]

4. Sales ⟨key⟩288 — Rescission — Ground of Rescission.

Where a motor truck was sold under a warranty of materials and workmanship for one year, the buyer's failure to repudiate the contract as soon as it discovered that the truck

was useless will not bar recovery where the contract was repudiated within a year.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 817–823; Dec. Dig. ☞288.]

5. TRIAL ☞141—JURY QUESTIONS—ISSUES.

It is unnecessary to submit to the jury matters admitted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 336; Dec. Dig. ☞141.]

6. SALES ☞391 — SECONDHAND ARTICLES — PRICE.

Where the seller of a motor truck representing that it had been used occasionally for demonstrating, deducted $50 from the price of $2,100, the deduction is no ground for defeating an action by the buyer to recover the purchase price; the truck being secondhand and wholly unfit for use.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1110–1127; Dec. Dig. ☞391.]

7. SALES ☞392—PURCHASE PRICE—RECOVERY.

Where a motor truck sold was wholly worthless, the buyer may recover the purchase price paid without returning the truck.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1128–1131; Dec. Dig. ☞392.]

8. SALES ☞397—CONTRACTS—WARRANTIES.

Where a motor truck was sold under a guaranty of materials and workmanship for one year, and the buyer sought to recover the price paid on the ground that the truck was wholly useless and secondhand, testimony of the buyer that the seller agreed, in case of any trouble, to furnish a skilled mechanic to place the truck in condition, was admissible to show good faith of the buyer in requesting that a mechanic be sent; such evidence not tending to vary the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1136; Dec. Dig. ☞397.]

Appeal from District Court, Guadalupe County; M. Kennon, Judge.

Action by the Staples Mercantile Company against the Avery Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

H. M. Wurzbach, of Seguin, and Burgess, Burgess, Germany & Chrestman, of Dallas, for appellant. Greenwood & Short and Dibrell & Mosheim, both of Seguin, for appellee.

CARL, J. Appellee sued appellant for $2,050 paid as the purchase price by appellee from appellant of one model type A Avery farm truck. The sale of the truck was about August 4, 1913, and the notes given in part payment therefor were paid about their maturity, October 1, 1913. Alfred Koebig was originally made a defendant along with the Avery Company of Texas, since he was the local agent who effected the sale of the truck, but he was subsequently dismissed from the suit. More of this later in the opinion.

The petition charges that, when the purchase was completed, appellee was requested by appellant's agent to sign an order blank addressed to Avery Company of Texas at Dallas, Tex., requesting the shipment of the truck, which order blank contained the following warranty:

"We guarantee Avery motor trucks against defective material and workmanship for a period of one year from date of shipment, and will replace free of charge f. o. b. factory any parts broken by reason of such defects, provided such parts are returned to Dallas for our inspection (transportation charges to Dallas prepaid), tagged with the name of the sender, the number of the truck from which the part or parts were taken, and the reasons for returning.

"This guarantee does not apply to tires, chains, or special equipment which are not manufactured by Avery Company, but are covered by the regular manufacturer's guarantee.

"This guarantee does not apply to claims arising from accident, misuse, or neglect in connection with machinery thereby purchased.

"The purchaser understands and agrees that no other guarantee of Avery motor trucks is made or authorized to be made by the company or its agents other above set forth."

The petition further alleges that the order blank constituting the contract for the purchase did not contain the entire contract, and did not intend or propose to express or do more than secure appellee's obligation to purchase and pay for the truck, and alleges that the truck was either defectively constructed, or constructed of defective material, and "was worthless and of no value," as a truck machine. The efforts put forth to make the truck do the work for which it was purchased are set forth, and notice is alleged to have been given appellant of such defects and of its failure to do the work for which it was purchased, and that finally the machine went to pieces, could not be operated at all, and was wholly worthless, and was secondhand when purchased. Appellee charges that it was deceived by appellant at the time of the purchase in that same was sold for a new machine, but was secondhand, and that its value at the time was only nominal, but, if it had been as represented, it would have been worth the contract price, for which this suit is brought as damages.

Appellant answered with numerous exceptions and denials, and denied specially that it ever sold the machine to appellee, but that Alfred Koebig had bought a machine on the same date from appellant, and that no representations were made except as contained in the written contract. It then sets up and relies on that written warranty, and pleads estoppel on the ground of laches, knowledge on the purchaser's part, and under the terms of the written contract of sale.

The case was tried before a jury, resulting in a verdict in appellee's favor for the amount sued for, upon which a judgment was entered.

[1] The first assignment is to the effect that the court erred in overruling the general demurrer to the petition because the allegations of the petition do not show that the terms of the warranty were complied with by the plaintiff by returning defective parts, etc. This must be overruled, because we think the allegations were sufficient to show a cause of action for fraud; it being

alleged that appellant deceived appellee by selling a machine as new, when, in fact, as alleged, it was an old secondhand truck which was worthless. This assignment, together with the second and third, which are based upon the overruling of the general demurrer, will be overruled.

It is elementary that, as a general rule, parol testimony is not admissible to vary the terms of a written contract; but there is no such sanctity about a writing that parties may not be permitted to go back of it and show that there was such fraud practiced in the procurement of the same as to vitiate the writing. By reason of various representations which appellee maintained were false, such, for instance, as that the truck was a new one, when, in truth, it was an old secondhand, worthless pile of junk, they were induced to sign the order containing the statements herein referred to, stating that this writing contained the whole agreement with reference to warranties, etc. The law never countenanced a rule which would deny a man the right to take advantage of fraud which had been practiced upon him. A contract was never drawn in language strong enough that fraud in its procurement may not penetrate and destroy. The very basic idea of a contract is that the minds have met in an agreement upon the matters, the subject-matter of the contract. It presupposes that the parties understand the elements entering into the agreement, and, if one party has deceived the other and withheld facts the other should know, or has misled him as to the facts upon which the agreement is based, there is no such contract that the law will not permit the light of investigation to be turned on it with a view of ascertaining whether it is enforceable. The late Justice Neill, speaking for this court in U. S. Gypsum Co. v. Shields, 106 S. W. 726, said:

"If a party were denied the right to show facts which prevent a writing from constituting a contract, such a writing would be free from all defenses and outside of all rules which determine the validity of contracts. * * * The evidence objected to was not introduced for the purpose of varying the terms of the writing sued upon, which it did not tend to do, but to the end of showing that defendant was induced to sign the paper by the fraudulent representations of the plaintiff."

And this opinion was affirmed by the Supreme Court in 101 Tex. 473, 108 S. W. 1165.

See, also, Commonwealth Bonding & Casualty Co. v. Bomar, 169 S. W. 1062, where a subscription blank to corporation stock recited that no conditions, representations, or agreements other than those printed therein should be binding on the corporation, and Justice Hendricks, speaking for the court, said, in substance, that parol evidence that the contract had been obtained from the plaintiff on false representations as to the amount of the corporation's capital stock which had been actually paid was admissible to show that the contract, by reason of the fraud, never, in fact, came into existence, and was not objectionable as varying the terms of the written subscription.

[2] Furthermore, the warranty in this case was evidently intended only to cover defective parts, and, since it is alleged that the whole truck was worthless for the purposes for which it was purchased and was secondhand, we do not see that there would be any variance. When a man buys an article in the marts of trade, we think, in the absence of a special agreement or of knowledge on his part to the contrary, that he has a right to presume that the article is new, and such as is customarily offered for sale in that line. Assignments fourth to eighth, both inclusive, are overruled.

[3] The allegations as to the amount expended in endeavoring to get the motor to operate were not improper as a circumstance tending to show that the motor was defectively constructed, and no recovery sought therefor. The ninth assignment is overruled.

[4] The court did not err in overruling defendant's special exception No. 10, to the effect that the plaintiffs had waived any rights they may have had under the contract by ratification and acceptance of the machine by keeping and using it, because even under appellant's theory of the warranty they had one year, and as soon as it was fully tested and ascertained that the machine would not do the work it was repudiated. The tenth assignment is overruled, and the eleventh, being without merit, is overruled. The trial court properly refused to direct a verdict for appellant. The twelfth assignment is without merit, and is overruled.

[5] There was no necessity to submit to the jury as to whether the truck had been used, because it may be taken as conceded that the truck had been used for demonstrating purposes, and because the warranty covered it for one year. If the charge was intended to cover the issue that the truck was a worthless secondhand one, it was insufficient for that purpose, and was correctly refused. The case was tried upon the theory that there was a general warranty of the whole car for one year, in addition to the special warranty as to parts which were to be returned if defective, etc. And an issue was submitted to the jury as to whether the truck was worthless for the purposes for which it was designed at the time it was purchased, and the jury said it was worthless. The thirteenth assignment is overruled.

[6] There is no doubt the truck was sold for $50 off on account of the fact that it was represented that the car had been used a little for demonstration purposes. Walter Schultz, who made the purchase, said that, when he and Koebig went to San Antonio to buy the machine, they looked at this one and told the agent they preferred one that had not been used, but the agent said:

"Why, this machine has only been used for demonstrating to prospective buyers. The same

guaranty covers it. You can run it around town a few times, and it will look like it has been used a little."

But he stated that it was as good as new, and Schultz thought he was buying a new truck that had only been used for demonstration purposes moderately, for which use the price was cut $50. The price they had made was $2,100, but it was sold for $2,050. So the selling price could make no difference.

[7] This is not a suit for rescission of the contract of sale, but is an action to recover money paid for a worthless machine, and, where goods are shown to be worthless, it is not necessary to return same. Gutta-Percha & Rubber Mfg. Co. v. City of Cleburne, 107 S. W. 157; Westinghouse Electric & Mfg. Co. v. Troell, 30 Tex. Civ. App. 200, 70 S. W. 324; Ash v. Beck et al., 68 S. W. 53; Hallwood Cash Register Co. v. Berry et al., 35 Tex. Civ. App. 554, 80 S. W. 857.

[8] The testimony complained of being admitted, under the twenty-fourth assignment, was not admitted to vary the terms of the written contract, but was:

"Mr. Peters stated to me that, if at any time we had any trouble with the truck, they would send a machinist, no matter where it was, to repair it and get it in good running order."

It seems to have been admitted to show the appellee's good faith in requesting that a skilled mechanic be sent to repair the car.

All assignments not specifically mentioned are overruled, and the judgment is affirmed.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

